1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  VICTOR RODRIGUEZ,                          CV F 04-5530 DLB HC

10                         Petitioner,        ORDER DENYING AMENDED PETITION
                                              FOR WRIT OF HABEAS CORPUS AND
11       v.                                   DIRECTING CLERK OF COURT TO ENTER
                                              JUDGMENT IN FAVOR OF RESPONDENT
12
    A.K. SCRIBNER,                            [Doc. 7]
13
                         Respondent.
14   _____/

15
16       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

18  the jurisdiction of the United States Magistrate Judge.

                                     BACKGROUND
19
20       On September 8, 1998, an information was filed in the Kern County Superior Court,

21  charging Petitioner with the following crimes: in Count 1, assault with a deadly weapon; in

22  Count 2, burglary[1]; in Count 3, injury to a child; in Counts 4 through 7, ex-felon in possession of

23  a weapon; in Counts 8 and 9, ex-felon in possession of ammunition; in Count 10, possession of

24  sawed-off shotgun; in Count 11, obliteration of serial numbers on a shotgun; in Count 12,

25  brandishing a weapon, a misdemeanor; and in Count 13, malicious destruction of property, a

26  misdemeanor (Cal. Pen. Code §§ 245, 459, 273A, 12021, 12319, 12020, 12090, 417, 594.)  (CT

27
28       [1] As to both Counts 1 and 2, it was alleged that Petitioner had used a firearm in the offense, and,
    additionally, as to Count 2 only, it was alleged that Petitioner was armed (Cal. Pen. Code §§ 12022.5, 12022).  (CT
    215-217.)

                                            1

1   215-230.)

2        The information further alleged, as to Counts 1 through 11, that Petitioner had previously

3   been convicted of two prior serious felonies, which were prior "strikes." (Cal. Pen. Code § 667;

4   CT 215-230.) Additionally, as to Counts 1, 2, and 4, the information alleged that Petitioner had

5   served a prior separate prison term for a felony conviction, within the meaning of California

6   Penal Code section 667.5. (CT 215-220.)

7        On November 2, 1998, pursuant to Petitioner's motion (CT 247-254), the court ordered

8   trial on Counts 4 through 11 to be severed from trial on Counts 1 through 3 and Counts 12 and

9   13; the court also bifurcated trial on the priors. (CT 260-261.) That same day, jury trial on

10  Counts 4 through 11 began. (CT 262.) On November 4, 1998, the jury found Petitioner not

11  guilty of Counts 4 through 10.[2]

12       On December 14, 1998, following jury trial in the Kern County Superior Court, Petitioner

13  was convicted of assault with a deadly weapon and misdemeanor brandishing a weapon. Cal.

14  Pen. Code §§ 245, 417. (CT[3] 384-385, 391, 479-486.) In a bifurcated court trial, it was found

15  true that Petitioner had previously suffered two prior serious felonies, and he had previously

16  served a prior separate prison term. Cal. Pen. Code §§667, 667.5. (CT 381, 385.) Petitioner was

17  sentenced to 25 years to life, plus one year for the prior prison term, plus a concurrent one-year

18  jail term for the misdemeanor. (CT 508, 511.)

19       Petitioner filed a timely notice of appeal. On August 8, 2000, the California Court of

20  Appeal for the Fifth Appellate District filed an opinion affirming Petitioner's conviction and

21  sentence. (Lodged Doc. No. 13.) On October 25, 2000, the California Supreme Court denied

22  Petitioner's petition for review. (Lodged Doc. No. 15.) On March 21, 2001, in case number

23  HC007144, the Kern County Superior Court denied Petitioner's petition for a writ of habeas

24  corpus. (Lodged Doc. No. 16.) On May 10, 2002, in case number F037840, the Fifth District

25

26      [2] On November 3,1998, the trial court dismissed Count 11 on the prosecutor's motion in the interest of
27  justice. (CT 267.)

28      [3] "CT" refers to the clerk's transcript and "RT" refers to the reporter's transcript of the state court
    proceedings.

2

1   Court of Appeal denied Petitioner's petition for a writ of habeas corpus. (Lodged Doc. No. 17.)

2   On January 22, 2004, in case number S114101, the California Supreme Court denied Petitioner's

3   petition for a writ of habeas corpus, in which he raised the same issues he raises in this

4   proceeding. (Lodged Doc. No. 18.)

5       Petitioner filed the instant petition for writ of habeas corpus on July 2, 2004.  On August

6   24, 2004, the Court directed Respondent to file a response to the petition.  Respondent filed an

7   answer to the petition on February 3, 2005, and Petitioner filed a traverse on March 23, 2005.[4]

8                        STATEMENT OF FACTS

9   Prosecution

10      Luciana Benavidez and her boyfriend Guillermo Ramirez resided at 2019 Beale Avenue

11  in Bakersfield, California, with their four young children.  (RT[5] I at 3-4.)

12      On June 24, 1998, Petitioner went to the Benavidez-Ramirez residence and confronted

13  Ramirez regarding a dispute that Ramirez and others had with a woman named Jenny Adames.[6]

14  (RT I 4; RT 113.)  Petitioner took a swing at Ramirez, resulting in a struggle in which Ramirez

15  pushed Petitioner away and ran inside the house and locked the door.  (RT 114-115.)  Petitioner

16  then threw a chair from the porch breaking the front window and cutting the leg of one of the

17  children inside.  (RT I 5-9; RT 41, 47-48, 115-117, 151-152.)

18      After the incident, Petitioner and Benavidez walked to a nearby phone booth to call the

19  sheriff.  At this time, Petitioner was standing across the street at the park and yelled out to

20  Ramirez to "handle it," i.e. keep Benavidez from summoning the sheriff.  (RT I 12, 15-17; RT

21  53, 147.)  Police responded to the scene and Ramirez told them he did not know anything about

22

23      [4]  On June 2, 2006, Respondent filed a motion to dismiss the petition in light of the Supreme Court's

24  opinion in Evans v. Chavis, 546 U.S. 189 (2006).  Petitioner filed an opposition on July 11, 2006.  (Court Docs. 25, 26.)  The Court denied Respondent's motion on December 20, 2006, and subsequently denied Respondent's motion

25  for reconsideration on August 20, 2007.  (Court Docs. 27, 30.)

26      [5]  There are two separate paginations in the Reporter's Transcript.  One of the reporter's transcript contains 49 pages of the beginning of the trial testimony, consisting of portion Luciana Benavidez' testimony.  The other

27  reporter's transcript, which starts the pagination anew, and consists of 479 pages.  The first transcripts containing 49 pages will be referred to as "RT I" and the second transcript will be referred to as "RT."

28      [6]  Ramirez was acquainted with Jenny and knew her boyfriend but had not had any prior disputes with her. However, Lisa Perez, a friend of his, had fought with Jenny regarding a man named Chino.  (RT 113-114, 145-146.)

3

1    the altercation.  (RT 16-17, 162.)

2    <u>Incidents on July 1, 1998</u>

3    _____Between 5 or 6 p.m. on July 1, 1998, Benavidez and Ramirez returned home from the

4    grocery store, as they approached the house, they observed some men, including Petitioner and

5    James Romero, standing close to a car that was parked in the alley next to the house.  (RT I 19,

6    21-22; RT 120.)  Benavidez and Ramirez's television set was placed in the back of the car and

7    Romero was holding their VCR.  (RT I 19, 21-24; RT 119-122, 169-170.)  Petitioner pulled out a

8    handgun and pointed it at them, they ducked and drove to the telephone booth and called the

9    police.  (RT I 26-27, 29, 31; RT 83, 123-125, 171-172.)

10   When Benavidez and Ramirez returned home with the deputy sheriff, the front door,

11   which had been left locked, was forced open and someone had taken their television set and

12   VCR.  (RT I 35-36, 39; RT 126-127.)

13   At approximately midnight that same evening, Ramirez, Benavidez, and Richard

14   Tescareno (aka "Solo"), were sitting on the front porch at the residence on Beale street.  Ramirez

15   went inside to use the restroom, Petitioner and Romero walked up the alley toward the house,

16   with their hands behind their backs.  (RT I 40, 43, 45.)  Petitioner told Luciana to call Ramirez.

17   (RT I 44, 46.)  Luciana observed someone that she did not recognize jump over the gate and hid

18   behind the chimney along the side of the house.  (RT I 46-48.)

19   Ramirez came out of the house and heard Benavidez pleading with the men for the

20   children's safety.  (RT 130.)  Petitioner told Ramirez to move to the side away from the others,

21   and when he did so, a man came running from the side of the house, with a sawed-off shotgun in

22   his hand.  (RT 12-16, 18, 131-132, 189.)  Ramirez backed into the house, and the man followed

23   him and shot him, and then ran away.  (RT 12, 14, 19, 21, 131-133.)

24   Petitioner and Romero then displayed their handguns, and fired at Benavidez then fled.

25   (RT 21-24, 133.)  A bullet was recovered from the house where it entered the wall about two feet

26   from Benavidez.  (RT 24, 29, 156-160.)  Ramirez was shot in the chest and hospitalized.  (RT 33,

27   35-36, 133, 136.)

28   On August 12, 1998, Detective Joseph Guiffre, and other officers, went to the residence

4

1   at 1229 Jeffrey Street, in Bakersfield, California to look for Petitioner, as he was observed going

2   into the residence.  (RT 293-299, 302-303.)  Officers knocked on the door,  Miss Moreno

3   answered and gave officers consent to search the residence for Petitioner.  (RT 300-302.)

4   Petitioner was inside the residence and officers found a backpack containing two sawed-off

5   shotguns and two handguns, similar to those used in the shootings.  (RT 300, 305-308; CT 386-

6   387.)

7        Both Benavidez and Ramirez identified Petitioner as the assailant from a photographic

8   lineup on July 16, 1998.  (RT 275.)    Ramirez was impeached with his prior convictions of

9   receiving stolen property and spousal abuse.  (RT 280.)

10  Defense

11        Petitioner testified in support of his defense.  On June 24, 1998, he stated that he had

12  agreed to speak to Ramirez, at the request of Jenny Adames, to tell him to leave her alone.  (RT

13  414-415.)  He went to Ramirez's residence and after Petitioner yelled for Ramirez, he came to

14  the front door.  (RT 416.)  Petitioner tried to talk to him; however, Petitioner became belligerent

15  and they starting shoving one another.  (RT 417.)  Ramirez walked toward the door and

16  Petitioner followed him.  Ramirez threw a chair at Petitioner, hitting him then striking the

17  window breaking it.  (RT 416-418.)  Petitioner then left.  Petitioner stated that he never

18  threatened Ramirez or tried to stop Benavidez from going to the phone booth.  (RT 419.)

19        Petitioner stated that he did not steal the television set or VCR and he did not even know

20  James Romero.  (RT 420-422.)  Nor did he wave a gun around.  (Id.)  Petitioner stated that he

21  was not involved in the shooting that occurred later that evening, as he was either at his sister's

22  or his girlfriend Julie's house.  (Id.)

23        With regard to the guns found at the residence of his girlfriend Manuela Moreno,

24  Petitioner stated that he helped her move into the house, and he did not live there.  (RT 433,

25  437.)  He had never touched the backpack and did not know where the weapons came from.  (RT

26  427.)

27        Petitioner had previously been convicted twice of assault with a deadly weapon.  (RT

28  430.)

1    Jenny Adames testified that she had been friends with Ramirez and Benavidez for

2    approximately two years.  (RT 394, 400-401.)  On evening in June or July of 1998, when Jenny

3    was about six months pregnant, she was assaulted by Lisa Perez at Ramirez and Benavidez's

4    home.  (RT 394-395.)  Ramirez, Benavidez, and others joined and/or assisted in the assault.

5    Jenny was badly beaten and went to the hospital.  (RT 395-396, 402.)  Jenny told Petitioner about

6    the assault and asked him to talk to Ramirez.  (RT 398.)

7    Richard Tescareno, also known as "Solo," who was in custody at the time of the trial,

8    stated that on the night of the shooting, he, Luciana and Ramirez had smoked PCP on the porch,

9    approximately 15 minutes before it occurred.  (RT 345-347.)  Tescareno was unable to identify

10   the first individual who approached the house from the alley, he could only tell that they were

11   male.  (RT 348-349, 353, 360, 368.)  He stated that both Ramirez and Benavidez stated that they

12   did not know who the shooter was.  (RT 353-354, 367-368.)  However, he stated that at the time

13   of the preliminary hearing, Ramirez told him to state that it was Petitioner.  (RT 354, 367.)

14   Deputy Sheriff Ron Mainord interviewed Ramirez on July 9, 1998, and Ramirez told him

15   that it was too dark to identify or describe any of the assailants.  (RT 376-377.)[7]

16                                    DISCUSSION

17   A.    Jurisdiction

18   Relief by way of a petition for writ of habeas corpus extends to a person in custody

19   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

20   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

21   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

22   violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

23   out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

24   U.S.C. § 2254(a); 2241(d).

25   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

26   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

27

28   _____

      [7] Ramirez acknowledged these statements during his testimony, and stated that he did not want to identify
Petitioner because he was afraid.  (RT 125, 182, 277-279.)  He subsequently decided that if he did not disclose the
identify of Petitioner, the incidents would continue to go on.  (RT 283.)

1    enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

2    F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

3    Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

4    1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

5    (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

6    petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

7    B.    Standard of Review

8          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

9    custody pursuant to the judgment of a State court only on the ground that he is in custody in

10   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

11         The AEDPA altered the standard of review that a federal habeas court must apply with

12   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

13   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

14   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

15   to, or involved an unreasonable application of, clearly established Federal law, as determined by

16   the Supreme Court of the United States;" or "resulted in a decision that was based on an

17   unreasonable determination of the facts in light of the evidence presented in the State Court

18   proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

19   the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

20   Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

21   because that court concludes in its independent judgment that the relevant state-court decision

22   applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

23   omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

24         While habeas corpus relief is an important instrument to assure that individuals are

25   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

26   (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

27   criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

28   Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

1   factual determinations must be presumed correct, and the federal court must accept all factual

2   findings made by the state court unless the petitioner can rebut "the presumption of correctness

3   by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

4   S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

5   110 F.3d 1380, 1388 (9th Cir. 1997).

6   C.      Admission of Weapons Possession/Violation of Due Process

7           Petitioner contends that the trial court erred by allowing the prosecution to admit into

8   evidence information that Petitioner was found in possession of firearms when he was arrested.

9   Petitioner's claim is founded on the ground that the firearm evidence was inadmissible because a

10  separate jury had acquitted him of the charges that he possessed the firearms.  (Amended

11  Petition, at 8.)

12          Petitioner raised this claim on direct review to the Court of Appeal and California

13  Supreme Court.  (Lodged Docs. 10, 13.)  The Court of Appeal rejected the claim in a reasoned

14  opinion, and the California Supreme Court denied review without comment.  (Lodged Docs. 13,

15  15.)  Petitioner raised the claim again in a petition for writ of habeas corpus submitted to the

16  Kern County Superior Court, California Court of Appeal, and California Supreme Court.

17  (Lodged Docs. 16, 17, 18.)  The Kern County Superior Court, denied the claim with a citation to

18  In re Lindley, 29 Cal. 2d 709, 723 (1947).  The California Court of Appeal and California

19  Supreme Court denied the petitions without comment.  (Lodged Docs. 17, 18.)

20          Because the California Supreme Court's opinion is summary in nature, however, this

21  Court "looks through" that decision and presumes it adopted the reasoning of the California

22  Court of Appeal on direct review, the last state court to have issued a reasoned opinion. See Ylst

23  v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)

24  (establishing, on habeas review, "look through" presumption that higher court agrees with lower

25  court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson,

26  217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court

27  opinion in determining whether state court's rejection of petitioner's claims was contrary to or an

28  unreasonable application of federal law under § 2254(d)(1)).

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. 62, 67-68 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).   Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 68-70.; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied,* 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).   However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.   Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Other act evidence, such as is at issue in the instant case, and in Estelle, is "irrelevant and may violate the due process clause if it goes only to character and 'there are *no* permissible inferences the jury may draw' from it. [Citations.]" Leavitt v. Arave, 383 F.3d 809, 829 (9th Cir. 2004).

In rejecting Petitioner's claim, the Court of Appeal held in relevant part:

> Here, the evidence that [Petitioner] was in constructive possession of guns similar to those used during the July 1, 1998, assault and brandishing incidents was circumstantially relevant in proving [Petitioner's] identity as the person who brandished a weapon that evening and as one of the of [sic] three gunmen who assaulted Benavidez later that night.  Further, as in *Dowling,* the court gave the jury a limiting instruction.  Nevertheless, [Petitioner] contends that he was prejudiced by the introduction of the evidence at issue because 1) unlike the jury in *Dowling,* the jury here was not informed that a previous jury had found that [Petitioner] was not in possession of the firearms; and 2) the jury here was not admonished regarding the handguns, even though the jury was informed that [Petitioner] was an ex-felon and would likely have known that it was illegal for him to possess any handguns.  We disagree.
>
> In *Dowling,* the Supreme Court approved of the trial judge's actions in charging the jury with a limiting instruction; it did not however, comment on the judge's actions in informing the jury that the defendant had been acquitted of the robbery.  Thus *Dowling* does not support [Petitioner's] contention that the court here erred by its failure to advise the jury that he had been acquitted of charges related to his alleged possession of the firearm found in the backpack.  Moreover, [Petitioner's] acquittal on the possession charges simply meant that the jury was unable to agree beyond a reasonable doubt that he possessed them it did not mean that they found as a matter of fact that he did not possess the firearms.  Further, admonishing the jury that [Petitioner] was acquitted of the possession charges would have unfairly suggested to the jury that they should find that he did not possess the weapons.
>
> Moreover, although the evidence at issue showed that [Petitioner] possessed two sawed-off shotguns, two handguns and ammunition for each type of firearm, the limiting instruction suggested that the only offense [Petitioner] committed by possessing the firearms in the backpack was unlawful possession of

a sawed-off shotgun.  The court did not advise the jury that by possessing the sawed-off shotgun [Petitioner] also committed the offense of being a felon in possession of a firearm.  In view of this, we find it unlikely that any jurors would have concluded that by possessing the handguns and ammunition [Petitioner] committed the additional offenses of possession of a firearm and/or ammunition by a felon.  In any event, in *Dowling* the acquitted conduct involved the defendant's participation in an attempted home invasion robbery in concert with another man, a far more serious offense than simple possession of firearms and ammunition by a convicted felon.  Given the Supreme Court's finding that introduction of evidence of that conduct did not violate the defendant's due process rights, we cannot conclude that introduction of evidence of far less egregious conduct, as occurred here, violated [Petitioner's] right to fundamental fairness.  Accordingly, we reject [Petitioner's] contention that he was denied the due process of law by the introduction of evidence regarding his alleged constructive possession of the backpack containing firearms and ammunition.

(Lodged Doc. 13, Opinion, at 10-11.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Neither the United States nor the California Supreme Courts preclude admission of evidence, introduced in a trial that results in acquittal, from being introduced for all purposes in a subsequent proceeding.  Dowling v. United States, 493 U.S. 342, 348 (1990); People v. Catlin, 26 Cal.4th 81 (2001).  California law allows all material and relevant evidence of other criminal conduct to be admissible at trial to show identity, knowledge, or motive pursuant to California Evidence Code section 1101, even if the defendant had actually been tried and acquitted of such conduct.[8]  Section 1101 evidence need only be proven by a preponderance of evidence.  People v. Carpenter, 15 Cal.4th 312, 381-382 (1997); CALJIC No. 2.50.  As stated by the Court of Appeal, the evidence that Petitioner was in constructive possession of guns that were similar to the weapon used during the assault and brandishing incidents was relevant in proving Petitioner's identity as the individual who brandished a weapon on the evening in question and one of the three gunmen who later assaulted Benavidez.  Thus, the acts at issue may very well be proven by a preponderance of the evidence,

---

[8]  California Evidence Code section 1101, subsection (b) states:

Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

1    despite having not been proven true beyond a reasonable doubt.  Petitioner was not retried on the

2    prior weapons possession offense, and the prior jury's acquittal did not preclude a subsequent

3    jury from finding the facts, proved to a preponderance, which are relevant and material to the

4    subsequent related charges.  The Estelle case itself involved the same California statute at issue

5    here, and held that evidence of other uncharged conduct by the defendant may properly be

6    admitted to demonstrate intent to commit the charged crime, and such evidence does not violate

7    due process.  Estelle, 502 U.S. at 70.  As stated by the Court of Appeal, the earlier acquittal

8    meant only that the offense was not established beyond a reasonable doubt; it did not mean that it

9    did not occur.  The Court of Appeal properly identified and applied the controlling and clearly

10   established Supreme Court authority, and its decision is neither contrary to nor an unreasonable

11   application of such authority.

12   D.      Jury Instruction Error

13          Petitioner contends that the trial court committed judicial misconduct by failing to

14   instruct the jury that Petitioner had been acquitted of criminally possessing the weapons in a

15   separate trial.  (Amended Petition, at 9.)

16          Petitioner raised this claim on direct review to the California Court of Appeal and

17   California Supreme Court.  (Lodged Docs. 13, 15.)  The Court of Appeal rejected the claim on

18   the merits in a reasoned opinion.  (Lodged Doc. 13.)  Petitioner subsequently raised the claim in

19   a state petition for writ of habeas corpus to the Kern County Superior Court, California Court of

20   Appeal, and California Supreme Court.  (Lodged Docs. 16 at arg. b, 17, 18.)  The Kern County

21   Superior Court denied the claim with a citation to In re Clark, 5 Cal.4th 750, 765 (1993), citing

22   In re Waltreus, 62 Cal.2d 218, 225 (1965).  (Lodged Doc. 16.)  The Court of Appeal and

23   California Supreme Court denied the petition without comment.  (Lodged Docs. 17, 18.)

24          A challenge to a jury instruction solely as an error under state law does not state a claim

25   cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

26   To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

27   ailing instruction by itself so infected the entire trial that the resulting conviction violates due

28   process.  See, id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but

                                                   11

1  must be considered in the context of the instructions as a whole and the trial record. Id.  The

2  court must evaluate jury instructions in the context of the overall charge to the jury as a

3  component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982)

4  (citing Henderson v. Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

5  that the instruction violated the petitioner's right to due process, a petitioner can only obtain

6  relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

7  resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

8  (1993) (whether the error had a substantial and injurious effect or influence in determining the

9  jury's verdict.).  See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of

10  demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

11  attack on the constitutional validity of a state court's judgment is even greater than the showing

12  required to establish plain error on direct appeal."  Id.

13  　　As discussed supra under section C, the evidence of the prior weapons possession was

14  properly admitted into evidence.  The jury was instructed with CALJIC No. 2.50, on the limited

15  use of the weapons evidence as set forth in California Evidence Code section 1101.[9]  Here, as

16  Respondent correctly argues, Petitioner did not request, and the trial court was not required to

17  give, an instruction to advise the jury that Petitioner had been acquitted of possessing the

18  weapons.  Further, such an information was have been irrelevant and potentially confusing to the

19  jury because the acquittal of the prior possession charge was simply not relevant to the jury's

20  determination of the use of the weapons evidence in the assault case.  As stated by the Court of

21  Appeal, the acquittal did not mean a jury found as a matter of fact that Petitioner did not possess

22

23  [9]  CALJIC No. 2.50 as read to the jury stated:

24
25  　　Evidence has been introduced for the purpose of showing that the defendant committed [a crime] other than that for which [he] is on trial, [namely, possession of a sawed off shotgun in violation of Penal Code Section 12021].  [This] evidence, if believed, [may not be considered by you to prove that defendant is a person of bad character or that [he] has a disposition to commit crimes.  It may be considered by you [only] for the limited purpose of determining if it tends to show:

26

27  　　[The identity of the person who committed the crimes, if any, of which the defendant is accused [in Counts 1, 2 & 4].

28

CT 436.

12

1   the firearms–it "simply meant that the jury was unable to agree beyond a reasonable doubt that he

2   possessed them." (Lodged Doc. 13, Opinion, at 11.)  Because the weapons possession evidence

3   need only be proven by a preponderance of the evidence under section 1101, the acquittal was

4   not relevant to the assault case.[10]

5        In sum, since the weapons possession of evidence was properly admitted under California

6   law, and all relevant instructions were given, the absence of an irrelevant instruction could not

7   and did not violate Petitioner's due process rights.  The state courts' determination of this issue

8   was not contrary to, or an unreasonable application of, clearly established Supreme Court

9   precedent.

10  E.    Insufficient Evidence/Sentencing

11       Petitioner contends that it was cruel and unusual punishment to sentence him to an

12  indeterminate term because there was insufficient evidence to support his conviction since the

13  jury found him guilty of assault with a deadly weapon but not guilty of possessing a weapon.

14  (Amended Petition, at 10.)

15       Petitioner raised the instant claim on direct review to the California Court of Appeal and

16  California Supreme Court.  (Lodged Docs. 10, 13, 15.)  The Court of Appeal denied the claim on

17  the merits in a reasoned opinion, and the California Supreme Court denied the petition without

18  comment.  (Lodged Doc. 13.)  Therefore, this Court looks through to the last reasoned, Court of

19  Appeal decision.  Ylst v. Nunnemaker, 501 U.S. at  804-05 & n. 3.  Subsequently, Petitioner

20  raised the claim in his state habeas corpus petitions submitted to the Kern County Superior Court,

21  California Court of Appeal, and California Supreme Court. (Lodged Docs. 16, 17, 18.)   The

22  Kern County Superior Court denied the claim with a citation to In re Lindley, 29 Cal.2d 709, 723

23  (1947). (Lodged Doc. 16.)  The Court of Appeal and California Supreme Court denied the

24  petitions without comment.  (Lodged Docs. 17, 18.)

25       The law on insufficiency of the evidence claim is clearly established.  The United States

26  Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

27  ───────────────

28       [10]  The constructive possession of the weapons charge was only a crime because Petitioner was a prior
     felon.  This charge would have likely been tried by the same jury, but for the fact the trial judge agreed with the
     defense that it might be prejudicial to Petitioner for the jury to be advised that he was an ex-felon.

federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

As set forth by the Court of Appeal, under California law, "'[a]n assault is an attempt to commit a battery. . . . Assault with a [firearm] is termed a "general intent" crime because it is not necessary to find a specific intent to cause a particular injury.  What is required, however, is the general intent to willfully commit a battery, an act which has the direct, natural and probable consequences, if successfully completed, of causing injury to another. . . . Intent to frighten or mere reckless conduct is insufficient. . . .' . . . 'All that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another.'"  (Lodged Doc. 13, Opinion, at 6) (citing People v. Lee, 28 Cal.App.4th 1724, 1734 (1994).

In rejecting Petitioner's claim, the Court of Appeal held in relevant part:

> The jury's failure to find that [Petitioner] personally used a firearm did not preclude his conviction in count 1 of assault with a firearm.  As noted by the court in *People v. Pettaway* (1988) 206 Cal.App.3d 1312,
>
> "'[A] jury may make inconsistent findings or verdicts as to a defendant charged with two offenses.  An acquittal on one offense will not invalidate a verdict on a second offense, although the two verdicts are factually inconsistent.  (*People v. Lopez*[] [1982] 131 Cal.App.3d [565,] 570.)  This rule is based on the realization that inconsistent findings may be caused simply by the mercy or leniency of the jury. [Citation.] The Lopez court found that this rule also should be applicable when the inconsistency exists between a verdict on an offense and a finding on an enhancement. . . .' (*People v. Nunez* [] [1986] 183 Cal.App.3d [214,] 226.)
>
> "We agree with the conclusion reached by the *Nunez* and *Lopez* courts that a negative finding on a personal-use enhancement does not necessarily mean the accused was not a direct perpetrator of the crime.  As pointed out in those cases, 'inconsistent findings may be caused simply by the mercy or leniency of the jury' (*People v. Nunez, supra*, 183 Cal.App.3d at p. 226), to which we might add, or through confusion or ennui." (*People v. Pettaway, supra*, 206 Cal.App.3d at pp. 1324-1325, *accord People v. Brown* (1989) 212 Cal.App.3d 1409, 1421.)
> The logic of *Nunez* and *Lopez* is particularly applicable to [Petitioner's] case because in those cases the jury returned not-true findings on the personal-use arming enhancement.  *(People v. Lopez* (1982) 131 Cal.App.3d 563, 569; *People v. Nunez* (1986) 183 Cal.App.3d 214, 226.)  In contrast, the jury here did not reach a finding on whether [Petitioner] personally used a gun in committing the assault charged in count 1.
>
> ...............................................................................................................
> Benavidez's testimony that [Petitioner] fired a handgun at her was neither

14

1
2
3

physically impossible, nor patently false.  In view of this, there is no basis on appeal for disregarding her testimony.  Further, testimony by one witness concerning any fact is sufficient for the proof of that fact.  (CALJIC No. 2.27.) Accordingly, we reject [Petitioner's] contention that the evidence is insufficient to sustain his conviction for assault with a firearm.

4    (Lodged Doc. 13, Opinion, at 5-7.)

5        The state courts' determination of this issue was not contrary to, or an unreasonable

6    application of, clearly established Supreme Court precedent.  First, as Respondent points out, the

7    jury did not necessarily find that the possession of a deadly weapon untrue, rather, the jury failed

8    to reach a unanimous verdict as to the weapon possession.  (*See* RT 581, 583.)

9        As found by the state court ample evidence supported Petitioner's conviction of assault

10   with a deadly weapon.  Count One of the information charged that Petitioner "willfully and

11   unlawfully commit[ted] an assault on Guillermo Ramirez and Luciana Benavidez, with a firearm,

12   to wit: a handgun and/or shotgun, in violation of Penal Code section 245(a)(2), a felony. [¶] It is

13   further alleged as to [Petitioner], that in the commission or attempted commission of the above

14   offense, he/she personally used a firearm, within the meaning of Penal Code section 12022.5(A).

15   (CT 215-216.)  As Respondent submits, three separate theories support the jury's finding.[11]  The

16   first theory, which is supported by the weightiest evidence, is that Petitioner was guilty as an

17   aider and abettor of the unidentified man who jumped from behind the chimney and shot

18   Ramirez in the chest from close range, apparently with a sawed-off shotgun.  (RT 12-16, 18-19,

19   21, 131-132, 189.)  The second theory was that Petitioner assaulted Luciana Benavidez when he

20   shot a handgun from close range in her direction, missing her, resulting in a bullet in the side of

21   the house.  (RT 21-24, 29, 133, 136, 159-160.)   The third theory of guilt was that Petitioner

22   aided and abetted Romero's assault on Benavidez when Romero, Petitioner's cohort, shot a

23   handgun at Benavidez.  (RT 21-24, 133.)  Sufficient evidence as is constitutionally required

24   supports each of these three theories, and the state courts' rejection of this claim was not contrary

25   to or an unreasonable application of federal law as defined in Jackson.

26

27
28

[11] The Court notes that it was entirely proper for the prosecutor to present different theories to support the single count of assault with a deadly weapon.  See Schad v. Arizona, 501 U.S. 624 (1991) (Supreme Court held that jurors are not constitutionally required to unanimously agree on alternative theories of criminal liability.)

1    Petitioner's primary focus is on the fact of the inconsistent verdicts, wherein the jury

2    found him guilty of assault with a deadly weapon without also finding he personally used a gun.

3    However, inconsistent verdicts do not invalidate convictions, under either state or federal

4    constitutional law.  United States v. Powell, 469 U.S. 57, 63, 68-69 (1984); Masoner v. Thurman,

5    996 F.2d 1003, 1005 (9th Cir. 1993); Cal. Pen. Code § 954; People v. Santamaria, 8 Cal.4th 903,

6    911 (1994).  As stated by the United States Supreme Court, although "symmetry of results may

7    be intellectually satisfying," it is not constitutionally required.  Standefer v. United States, 447

8    U.S. 10, 25 (1980).

9    F.    Ineffective Assistance of Trial Counsel

10    Petitioner contends that trial counsel rendered ineffective assistance in the following

11    respects: (1) failing to sufficiently investigate and call potential defense witnesses to be presented

12    at trial; (2) by not objecting to evidence Petitioner possessed weapons; and (3) failing to raise

13    "better" cases to persuade the trial judge to strike one of the prior felony convictions and failing

14    to challenge the validity of the strike priors.  (Petition, at 11-14.)

15    Petitioner raised this claim in his state habeas corpus petitions to the Kern County

16    Superior Court, California Court of Appeal, and California Supreme Court.  (Lodged Docs. 16,

17    17, 18.)   The Kern County Superior Court denied the claim on the merits in a reasoned opinion.

18    (Lodged Doc. 16.)  The Court of Appeal and California Supreme Court denied the petitions

19    without comment.  (Lodged Docs. 17, 18.)  Therefore, this Court looks through to the last

20    reasoned, Kern County Superior Court decision.  Ylst v. Nunnemaker, 501 U.S. at  804-05 & n.

21    3.

22    The law governing ineffective assistance of counsel claims is clearly established for the

23    purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

24    151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

25    assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

26    668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

27    the petitioner must show that counsel's performance was deficient, requiring a showing that

28    counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

16

the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687.  The petitioner must show that counsel's

representation fell below an objective standard of reasonableness, and must identify counsel's

alleged acts or omissions that were not the result of reasonable professional judgment

considering the circumstances. <u>Id</u>. at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348

(9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.  <u>Strickland</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); <u>Sanders v.</u>

<u>Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive

defendant of a fair trial, one whose result is reliable.  <u>Strickland</u>, 466 U.S. at 688.  The court must

also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

ineffectiveness.  <u>Id</u>.; <u>Quintero-Barraza</u>, 78 F.3d at 1345; <u>United States v. Palomba</u>, 31 F.3d 1356,

1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

have been different.

A court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

<u>Strickland</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable

application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>Weighall v. Middle</u>, 215 F.3d

1058, 1062 (2000).  The Court will address each of Petitioner's sub-claims separately.

1.    <u>Failure to Sufficiently Investigate and Call Potential Defense Witnesses at Trial</u>

As previously stated, Petitioner contends that trial counsel rendered ineffective assistance

by failing to sufficiently investigate and call potential defense witnesses at trial.  Petitioner's

claim fails on the merits.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. This includes a duty to investigate the defendant's "most important defense," Sanders v. Ratelle, 21 F.3d at 1446, 1457 (9th Cir. 1994), and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict. Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir.1999). However, "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted). "A claim of failure to interview a witness ... cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir.1986) (citations and quotations omitted). In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt.  Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel). When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails. Eggleston, 798 F.2d at 376. Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." Id. The absence of affidavits from uncalled witnesses puts a petitioner's claim at a disadvantage.  Howard v. O'Sullivan, 185 F.3d 721, 724 (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would severely hobble [the petitioner's] case.")

        In his petition, Petitioner contends that trial counsel should have called Cynthia and Lisa Perez who would have testified that he was "not" the person who was standing in front of their

apartment on July 1, 1998, brandishing a firearm at the prosecution's witness.  (Petition, at 11.)

Petitioner further contends that counsel should have also called Diana Rodriguez and Judy

Bradshaw, who would have both testified to his whereabouts on July 2, 1998, the day of the

shooting.  (Id.)

        In rejecting this claim raised in the state habeas corpus petition, the Kern County Superior

Court held:

        Petitioner fails to state a claim.  He has not shown he was prejudiced by
        his attorney's failure to have the four purported alibi witnesses testify.  With
        respect to the possible testimony of Cynthia and Lisa Perez, Petitioner claims they
        would have testified that he was not in front of their apartment on July 1, 1998.
        However, he give no indication why there is any reason to believe the jury would
        have believed them instead of the victims who testified that they were certain it
        was Petitioner who brandished the firearm at them.  Absent some showing on that
        point, it cannot be said that it is reasonably probable that the result of the case
        would have been more favorable to Petitioner had his attorney had the Perezes
        testify.  With respect to Petitioner's sister and Ms. Bradshaw, Petitioner only
        claims they would have testified as to his whereabouts on July 2, 1998.  That is
        not enough.  Petitioner does not indicate what testimony these women would have
        given as to his whereabouts on July 2, 1998, and specifically at the time of the
        shooting.  Without some indication of what the testimony of Ms. Rodriguez and
        Ms. Bradshaw would have been, it cannot be said that they would have even
        provided an alibi for Petitioner.

(Lodged Doc. 16, at 4-5.)

        Petitioner does not show these witnesses were willing to testify, let alone submit any

supporting affidavits from, from the potential alleged witnesses, or even from himself.  As

Respondent correctly argues beyond merely naming these potential witnesses, one of whom has

the same surname as Petitioner, Petitioner's claims about their potential testimony is nothing

more than vague speculation.  Without specifics and evidentiary support of those specifics,

Petitioner has not and likely cannot demonstrate ineffectiveness or prejudice.  Dows v. Wood,

211 F.3d 480, 486 (9th Cir. 2000).  Based on the foregoing, the state court rejection of Petitioner's

claim was not contrary to or an unreasonable application of Strickland. v. Washington. See 28

U.S.C. § 2254(d). The claim must be denied.

        2.        Failure to Object to Evidence Petitioner Possessed Weapons

        Petitioner contends that counsel was incompetent for failing to object to the introduction

of the evidence that he possessed the weapons at a time other than during the assault and

brandishing episodes of which he was convicted.  (Petition, at 12.)  Petitioner's claim is without

merit.

As stated above in section C, the evidence that Petitioner possessed the weapons was admissible under California Evidence Code section 1101, subdivision (b), to show identity as the perpetrator of the assault with a deadly weapon, and the judge properly instructed the jury on its limited use of the evidence. Estelle, 502 U.S. at 67-70; Leavitt, 383 F.3d at 829. As submitted by Respondent, a Tenth Circuit case, directly on point, held that where other crimes evidence is properly admissible under state law, there can be no resulting prejudice based on counsel's failure to object to such evidence. Hale v. Gibson, 227 F.3d 1298, 1320-1321 (10th Cir. 2000). As there was no basis to object, there can be no claim that counsel was ineffective. Further, even had there been an objection it would have been overruled and the result would have been the same. Petitioner's claim fails on the merits.

3.     Failure to Persuade Judge to Strike Prior Felony Convictions

As previously stated, Petitioner contends that counsel was ineffective for failing to raise "better" cases to persuade the judge to strike the prior serious felony convictions, and for failing to challenge the validity of the prior strike convictions.

As outlined in the information filed by the state, Petitioner was subject to California's Three Strikes law because he was convicted of assault with a deadly weapon, and had previously twice been convicted of serious felonies qualifying as strikes, namely a 1989 assault with a deadly weapon and a 1993 assault with a deadly weapon. (Cal. Pen. Code §§ 667, 1170.12; CT 385.) Applying the two prior strikes, Petitioner was sentenced to 25 years to life for the instant conviction of assault with a deadly weapon. (CT 508, 511.)

Prior to sentencing, trial counsel filed a written motion and argued to the trial court that it should exercise its discretion to strike one of the prior convictions in the interest of justice, however, the court was not persuaded and denied the motion. (CT 497-501; 12-14-98 RT 16-17.)

In his petition, Petitioner merely contends that counsel should have raised "better" cases, which would have persuaded the judge. In his traverse, Petitioner contends that counsel acknowledged there were other three strikes cases he could have argued, but it would have been

20

1   futile given that the judge denied the motion under <u>People v. Romero</u>, 13 Cal.4th 497 (1996).

2   (Traverse, at 4-4A.)  Petitioner cites numerous cases which he claims counsel could have relied

3   on. (*See* Traverse, at 4-4A through 4-4C.)   However, as stated by the Kern County Superior

4   Court in denying this claim, Petitioner does not "indicate why, if his attorney had relied on other

5   cases, there is any reason to believe the motion would have been granted." (Lodged Doc. No. 16,

6   at 5.)   Petitioner's claim is nothing more than vague and speculative allegations, devoid of

7   factual or legal support.  The state courts' determination of this issue was not contrary to, or an

8   unreasonable application of, clearly established Supreme Court precedent.

9        Petitioner further contends that counsel was ineffective for failing to challenge the prior

10   convictions on the basis that there was no proof that Petitioner was advised in the prior

11   proceedings that the convictions could later be used to have a subsequent sentence.  Petitioner's

12   claim is without merit.  There is no due process violation where the trial court fails to inform the

13   defendant of collateral consequences, such as the potential for enhancement in the future. <u>United

14   States v. Brownlie</u>, 915 F.2d 527, 528 (9th Cir. 1990); <u>United States v. Garrett</u>, 680 F.2d 64, 65-

15   66 (9th Cir. 1982).  Therefore, there was no basis for counsel to challenge the applicability of the

16   Three Strikes law to Petitioner's prior convictions, and the failure to raise a frivolous argument

17   cannot support the basis for an ineffective assistance claim.  *See e.g.* <u>Jackson v. Calderon</u>, 211

18   F.3d 1148, 1155 (9th Cir. 2000); <u>James v. Borg</u>, 24 F.3d at 26; <u>Lowry v. Lewis</u>, 21 F.3d 344, 345

19   (9th Cir. 1994).

20        Further, counsel cannot be faulted for not convincing the sentencing court to strike one of

21   the prior convictions.  As previously stated, defense counsel filed a written motion and argued to

22   the court to exercise its discretion to strike one of the prior convictions.  Petitioner was

23   preciously the type of offender the Three Strikes law was designed to punish.  Petitioner was

24   previously convicted of three violation, serious felonies of assault with a deadly weapon, and

25   served two prior prison terms, and violated parole and probation numerous times.  **(**12-14-98 RT

26   11-17.**)**   In fact, during the proceedings at trial, Petitioner admitted that he had been convicted of

27   the prior convictions.  (RT 430.)  In determining whether to strike the prior convictions, the court

28   relied on the certified copies of the priors, Petitioner's testimonial admission, the serious nature

21

1   of the priors, and Petitioner's criminal record in general. (RT 591; 12-14-98 RT 16-17.)

2   Petitioner's counsel was not ineffective and any further attempt by counsel to mitigate the

3   sentence would not have been successful.

4           Petitioner claims that counsel's flaws cumulated into error, however, if there is no error,

5   there can be no cumulative error.  Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999).   The state

6   courts' determination of this issue was not contrary to, or an unreasonable application of, clearly

7   established Supreme Court precedent.

8   G.      Ineffective Assistance of Appellate Counsel

9           Petitioner contends that appellate counsel was also ineffective for many of the same

10  reasons he contends trial counsel was ineffective.  (*See* Amended Petition, at 15-19.)

11          Petitioner raised this claim in his state habeas corpus petitions to the Kern County

12  Superior Court, California Court of Appeal, and California Supreme Court.  (Lodged Docs. 16,

13  17, 18.)  The Kern County Superior Court denied the claim on the merits in a reasoned decision.

14  (Lodged Doc. 16.)  The Court of Appeal and California Supreme Court denied the petitions

15  without comment.  (Lodged Docs. 17, 18.)  Therefore, this Court looks through to the last

16  reasoned, Kern County Superior Court decision.  Ylst v. Nunnemaker, 501 U.S. at  804-05 & n.

17  3.

18          Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

19  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

20  assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller

21  v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

22  Cir.1986); See, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

23  where a defendant has been actually or constructively denied the assistance of appellate counsel

24  altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

25  that Strickland does apply where counsel is present but ineffective).

26          To prevail, Petitioner must show two things.  First, he must establish that appellate

27  counsel's deficient performance fell below an objective standard of reasonableness under

28  prevailing professional norms.  Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052,

2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989).  Appealing every arguable issue would do disservice to the Petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. Id.  Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n.10 (citing Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

Because as discussed above under section F, there is no merit to Petitioner's claims that his trial counsel was in any way ineffective, appellate counsel could not have been ineffective for failing to raise meritless issues.  Featherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1984).

For the reasons explained above, Petitioner's claims that trial counsel was ineffective fail under Strickland. First, Petitioner's claim that appellate counsel was ineffective for failing to challenge trial counsel's failure to fully investigate the case prior to trial and present the testimony of potential defense witnesses, is without merit.  (Amended Petition, at 15.)  As previously stated, Petitioner has not shown that these witnesses were willing to testify, let alone submit any supporting affidavits from counsel, from the potential alleged witnesses, or even from himself.  Beyond merely naming these potential witnesses, one of whom has the same surname as Petitioner, Petitioner's claims about their potential testimony are nothing more than vague speculation.  Further, the fact that appellate counsel did not raise every issue that Petitioner requested be raised, does not rise to the level of ineffective assistance, and in any event, Petitioner does not demonstrate any resulting prejudice.  See Miller v. Keeney, 882 F.2d at 1434

23

n.10.

Second, Petitioner's claim that appellate counsel was ineffective for failing to object to the evidence that Petitioner constructively possessed weapons upon his arrest, is likewise without merit.  As stated above under section F, trial counsel was not incompetent for failing to challenge the admissibility of evidence which was patently admissible.  Accordingly, appellate counsel likewise could not have been incompetently for failing to raise a meritless claim.  Furthermore, there is no prejudice because had either trial or appellate counsel raised the issue, it would have been denied by the trial court and the result would have been the same.

Third, Petitioner's claim that appellate counsel should have raised the issue of trial counsel's incompetency in failing to make a better argument regarding striking one of the prior convictions, fails on the merits.  (Amended Petition, at 17.)  For the same reasons set forth above under section F, Petitioner has not established neither ineffectiveness nor prejudice. Accordingly, appellate counsel had no obligation to raise this futile issue, and, had he done so, there is no likelihood Petitioner would have prevailed on appeal.  Miller v. Keeney, 882 F.2d at 1432 n.10.

Fourth, Petitioner's claim that appellate counsel should have raised the issue of trial counsel's failure to challenge the validity of the prior convictions because he was not advised, at the time of the prior convictions, that they could be used as strikes, likewise fails on the merits. As set forth above under section F, Petitioner has not shown ineffectiveness or prejudice because there was no basis to challenge the prior convictions as he alleges.  Brownlie, 915 F.2d at 528. Since trial counsel would not have prevailed on this claim, appellate counsel could not have been incompetent for failing to raise this meritless issue.

Lastly, with regard to his claim that appellate counsel ineffectively represented him by failing to challenge the admissibility of weapons possession evidence, this claim likewise fails. To the contrary, appellate counsel did raise this issue on appeal, and the appellate rejected it. (Lodged Doc. Nos. 10 & 13.)  Further, as with Petitioner's other claims, because the weapons evidence was properly admitted under California law, there was no basis upon which to challenge trial counsel's ineffectiveness, and his claims fails.

1    Accordingly, Petitioner has not shown that appellate counsel acted unreasonably in failing

2    to raise any of these claims, or that Petitioner would have prevailed had appellate counsel raised

3    such claims.  As stated by the Kern County Superior Court, "Petitioner has not established that

4    any of the various claimed errors or deficiencies actually occurred at trial.  And because he has

5    not, he has not established that his appellate attorney's representation was deficient for failing to

6    argue that the errors and deficiencies had occurred." (Lodged Doc. 16, at 7.)  The state courts'

7    determination of this issue was not contrary to, or an unreasonable application of, clearly

8    established Supreme Court precedent.

9                                          ORDER

10    Based on the foregoing, it is HEREBY ORDERED that:

11    1.    The petition for writ of habeas corpus is DENIED; and

12    2.    The Clerk of Court is directed to enter judgment in favor of Respondent.

13

14    IT IS SO ORDERED.

15    **Dated:    August 27, 2007**            _____ /s/ **Dennis L. Beck**_____
                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28